UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LUIS ALBERTO BACILIO VICENTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00067-MPB-MG |
| | ) | |
| WARDEN, | ) | |
| FIELD OFFICE DIRECTOR, | ) | |
| TODD M. LYONS, | ) | |
| KRISTI NOEM, | ) | |
| PAMELA JO BONDI, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Luis Bacilio Vicente seeks a writ of habeas corpus requiring that he be immediately released from U.S. Immigration and Customs Enforcement ("ICE") detention. Dkt. 1 at 17. Because the undisputed facts demonstrate that Mr. Bacilio Vicente is eligible for bond, the Court **grants** his petition by directing that, by **5:00 pm on February 17, 2026**, he be afforded a bond hearing or released from detention under reasonable conditions of supervision.

## I.    Background

Mr. Bacilio Vicente is a citizen of Mexico, who entered the United States without admission or parole in or around 2005. Dkt. 1 ¶¶ 54–55. Federal immigration agents arrested Mr. Bacilio Vicente in Washington on December 3, 2025. Dkt. 7-1 at 5 (ERO Narrative). Mr. Bacilio Vicente was subsequently served with a with a Warrant for Arrest of Alien (Form I-200). *Id.* At some point, Mr. Bacilio Vicente was transferred to Clay County Jail in Brazil, Indiana. *See id.* at 1 (showing petitioner's address as 611 East Jackson St. Brazil, IN, 47834). On January 8, 2026, the Department of Homeland Security ("DHS") issued a Notice to Appear for removal proceedings pursuant to 8

U.S.C. § 1229a in Chicago, which was served to Mr. Bacilio Vicente on January 12. *Id.* The Notice

charged Mr. Bacilio Vicente as "subject to removal" per §§ 212(a)(6)(A)(i) of the Immigration and

Nationality Act ("INA") because "[he] [was] not then admitted or paroled after inspection by an

immigration officer." *Id.* He was then scheduled for an immigration court hearing in Chicago on

January 26, 2026. *Id.* Mr. Bacilio Vicente's first Master Calendar hearing is now set for February

11, 2026. Dkt. 1 ¶ 3.

## II.    Discussion

Mr. Bacilio Vicente claims that his current detention violates the INA and its accompanying

regulations (Counts I and II) and the Due Process Clause of the Fifth Amendment (Count II). Dkt.

1 ¶¶ 60–76. Respondents argue that Mr. Bacilio Vicente is lawfully detained under 8 U.S.C. §

1225(b)(2)(A); that, in the alternative, he is lawfully detained under 8 U.S.C. § 1226(a) because

he will have the opportunity to receive a hearing; and that his detention is constitutional. Dkt. 7.[1]

The Court finds that Mr. Bacilio Vicente's detention is governed by § 1226(a) and that it is

unlawful because he has not been afforded a bond hearing. Because Mr. Bacilio Vicente is entitled

to habeas corpus relief on these grounds, the Court does not address the constitutional arguments.

---

[1] Mr. Bacilio Vicente argues, and the Respondents dispute, that he is entitled to relief as a member of the
nation-wide class in *Maldonado Bautista v. Noem*, No. 5:25-CV-1873 (C.D. Cal. Dec. 18, 2025). The Court
need not reach the parties' arguments concerning the legality or wisdom of enforcing *Maldonado Bautista's*
declaratory judgment in this case. The Respondents cite *Trump v. J.G.G.*, in which the Supreme Court
recently reiterated that (a) any claim implying the invalidity of the claimant's custody "must be brought in
habeas corpus," and (b) habeas jurisdiction lies only with the district where the claimant is confined. 604
U.S. 670, 671–72 (Apr. 7, 2025) (applying *Nance v. Ward*, 597 U.S. 159, 167 (2022)); *Heck v. Humphrey*,
512 U.S. 477, 487 (1994); *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). On that basis, the Supreme Court
vacated a preliminary injunction barring the removal of a provisionally certified class of aliens and held
that class members must pursue any relief in habeas actions in the districts where they were confined. *Id.*
at 673–74. The precise question Mr. Bacilio Vicente raises is not the same as in *J.G.G.* He seeks relief
through the proper vehicle (a habeas petition) and in the proper venue (the district where he is confined),
but he seeks relief based on a judgment issued from a different district. If *J.G.G.* does not squarely forbid
this Court to grant him relief based on *Maldonado Bautista's* declaratory judgment, it certainly presents
cause for caution. Accordingly, the Court addresses the merits of Mr. Bacilio Vicente's claim.

## A. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an IJ. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond . . . ; or

(B) conditional parole . . . .

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976,

982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

**B. Mr. Bacilio Vicente Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)**

Mr. Bacilio Vicente argues that he can only be detained under § 1226(a). Dkt. 1 ¶¶ 25–53. As many courts in this district have found, Mr. Bacilio Vicente's interpretation of the statute is more convincing from the standpoint of the statute's text, context, and history.

**i. Statutory Text**

As seen above, § 1225(b)(2)(A) states, "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained[.]" 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Respondents argue that § 1225(b)(2)(A) applies to everyone who fits into the category of an "applicant for admission" per § 1225(a)(1). Thus, § 1225(b)(2)(A) applies to Mr. Bacilio Vicente because he is an "alien" who is "present in the United States" who "has not been admitted." This Court as well as many other district courts across the country have found this interpretation unpersuasive because it makes the very next phrase in the clause, "an alien seeking admission," redundant and meaningless. *See Delgado Avila v. Crowley*, No. 2:25-cv-00533-MPB-MJD, 2025 WL 3171175, *2 (S.D. Ind. Nov. 13, 2025); *Cazarez-Gonzales v. Olson*, No. 2:25-cv-590-JPH-MJD (S.D. Ind. Dec. 5, 2025), dkt. 19 at 8 (collecting cases).

The Seventh Circuit recently explained that "seeking admission" cannot be read as synonymous with "applicant for admission." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)) ("[E]very clause and word of a statute should have meaning.")).[2] "If an

---

[2] The Court cites *Castañon-Nava* as persuasive precedent. *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' — F.4th —, 2025 WL 3552514, at *8. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event,

5

interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Id.* (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08, 130 (2010)). "[T]his presumption is 'strongest when an interpretation would render superfluous another part of the same statutory scheme,' as would be the case here." *Id.* (quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)). Thus, the fact that "an alien seeking admission" directly follows "applicant for admission" should dissuade courts from viewing the terms as interchangeable. Furthermore, Congress's own definition of "applicant for admission" does not include "an alien seeking admission."

> [I]t is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an "applicant for admission" to "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). It could easily have included noncitizens who are "seeking admission" within the definition but elected not to do so.

*Id.*

Viewing "an alien seeking admission" as a meaningful phrase, its plain meaning does not apply to Mr. Bacilio Vicente.[3] For one, "seeking admission" is written in present-tense active language. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). As this Court explained, "'seeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *see also Beltran Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents'

---

as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

[3] Unlike "applicant for admission," "an alien seeking admission" is not defined within the statute. Therefore, in construing the statutory language, the Court gives the text its plain meaning. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018) (directing courts, in the absence of a statutory definition, to be guided by the plain meaning of the text).

interpretation of section 1225(b)(2) to cover all aliens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and "those who have been present in the country for years are not actively 'seeking admission.'"); *Rusu v. Noem*, 2025 WL 3240911, at \*5 (N.D. Ill. Nov. 20, 2025) ("Noncitizens who are just 'present' in the country—who have been here for years and never proceeded to obtain any form of citizenship (e.g. asylum, permanent residency, refugee status, visas, etc.)—are not 'seeking' admission."). At no point in his 20 years in the United States did Mr. Bacilio Vicente actively seek admission into the country by presenting himself to immigration officials. If anything, Mr. Bacilio Vicente demonstrates that he is "seeking to remain in the United States," not seeking admission. *Alejandro*, 2025 WL 2896348, at \*7 ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago.").

Respondents cite the recent Fifth Circuit Court of Appeals decision, which upheld the government's interpretation of § 1225(b)(2)(A) in finding that "seeking admission" is a permissible redundancy for "applicant for admission." *Buenrostro-Mendez v. Bondi*, 2025 WL 323330, at \*5 (5th Cir. Feb, 6, 2026) ("The Supreme Court has observed that 'redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication' . . . That seems doubly true where the ordinary meaning of the terms involved overlap. Because being an applicant ordinarily entails seeking something, it seems natural to use the words somewhat interchangeably.") (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)).

The Fifth Circuit's decision is neither binding nor persuasive on this Court. This Court continues to defer to the Seventh Circuit's recent interpretation of the statute, which finds that "seeking admission" cannot be logically seen as synonymous with "applicant for admission" without violating several established canons of statutory interpretation. *See Castañon-Nava*, 161

F.4th at 1061. Indeed, in dissent, Fifth Circuit Court of Appeals Judge Douglas emphasized that the government's interpretation of "seeking admission" creates an inexplicable redundancy within the same sentence, contravening "a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." *Id.*, at *12 (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)).

### ii.  Statutory Context and Framework

Respondents' interpretation of § 1225(b)(2)(A) does not make sense when read, as it must be, in the context of the rest of § 1225 and the INA's statutory framework. "[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted).

Considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" aliens attempting to enter the United States at a border or a designated port of entry. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly carves out exceptions for "crewm[e]n" and "stowaway[s]" in § 1225(b)(2)(B), which further demonstrates

8

that § 1225 applies broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports.

As Respondents concede, § 1225 as a whole governs "inspection." Dkt. 7 at 8. Though not defined in the statute, regulations for "Inspection of Persons Applying for Admission" characterize inspection as occurring at or near the U.S.-Mexico or U.S.-Canada border or a port of entry. *See* 8 C.F.R. § 235.1(f) *et seq.* (referring to aliens seeking admission at a "port-of-entry;" inspecting aliens who have been "brought to the United States . . . after having been interdicted in international or United States waters;" and repeatedly referring to "land border" and "land border port-of-entry" throughout). However, "[n]o inspection or screening takes place for a noncitizen residing in the United States who is subsequently detained because his or her parole has expired." *Walizada v. Trump*, 2025 WL 3551972, at *11 (D. Vt. Dec. 11, 2025).

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the "[a]pprehension and detention of aliens." The plain language here suggests that § 1226—not § 1225—applies to Mr. Bacilio Vicente because he is an "alien," who was "apprehended" and "detained" after a warrant was issued for his arrest. The fact that these two classes of noncitizens would be treated differently makes sense within broader immigration law. As the Seventh Circuit explained, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed, '[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.'" *Castañon-Nava*, 161 F.th at 1061 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). ("[O]ur

immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Last, Respondents' interpretation of § 1225(b)(2)(A) would make the recently enacted amendment to § 1226(c) superfluous. Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of aliens not eligible for a bond hearing are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. As seen above, courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). Indeed, the dissent in the recent Fifth Circuit decision emphasized that the government's position that § 1225(b)(2)(A) and § 1226(a) and (c) can overlap "drastically understates the significance of what it proposes" since it would make the Laken Riley Act's exceptions for inadmissible aliens completely unnecessary. *Buenrostro-Mendez*, 2026 WL 323330, at *13.

### iii.  Prior Agency Usage and History

Respondents' argument also fails when considering the statute's prior usage and history. The government emphasizes that Congress passed the current detention framework as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), and one aim of this

legislation was to equalize the treatment of aliens at the border and unadmitted aliens within the interior in removal proceedings. Thus, according to Respondents, it makes sense that the statute would be amended to bring both categories of unadmitted aliens under the same detention scheme. Many courts have rejected this argument because it takes one statutory goal and applies it to the entire statutory scheme. *See Buenrostro-Mendez*, 2026 WL 323330, at *17 (dissent) ("[T]he reference to a single sentence of a House Report suggesting Congress wished to equalize treatment of noncitizens at the border and in the interior does not give the government the footing it thinks it does."); *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1332 (W.D. Wash. 2025) (disagreeing with the government's interpretation of the legislative history; "the government err[s] in its analysis by identifying *one* of Congress's concerns in enacting IIRIRA and then treating it as Congress's sole concern driving the statute.") (internal quotation omitted). Per *Rodriguez*, the IIRIRA resolved the "'entry doctrine anomaly,'" by placing unadmitted aliens "'on equal footing in removal proceedings under the INA'" so that they bore the same burden of proof. *Id.* (quoting *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020)). "But creating a level playing field in removal proceedings 'says nothing about detention pending the outcome of those proceedings.'" *Id.* (quoting *Romero v. Hyde*, 795 F. Supp. 3d 271, 287 (D. Mass. 2025)).

As Mr. Bacilio Vicente notes, the legislative history also conveys that the IIRIRA intended to maintain the status quo of treating the two categories of unadmitted aliens distinctly for the purposes of detention. Dkt. 1 ¶ 31. *See* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (Section 1226(a) "restates the current provisions . . . regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States."); H.R. Rep. No. 104-828, at 209 (1996) (Conf. Rep.) ("New [§ 1225(b)] establishes new procedures for the inspection and in some cases removal of aliens arriving in the United States."). Indeed, following the IIRIRA, the

Executive Office for Immigration Review ("EOIR") drafted regulations explaining that, generally, people who entered the country without inspection are subject to detention under § 1226(a). *See* 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Until the recent policy shift in July of 2025, the government previously applied section 1226(a) to unadmitted noncitizens, such as Mr. Bacilio Vicente, who were arrested in the interior of the country. *See Matter of Hurtado*, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."). While an agency's interpretation of a statute is not dispositive, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), the statute's prior usage and history may be considered along with the plain text of the statute, and the statutory context. Here, that weighs in favor of finding that § 1226(a), not § 1225(b)(2), applies to Mr. Bacilio Vicente.

### C. Opportunity for Bond Hearing

In the alternative, Respondents argue that Mr. Bacilio Vicente is being lawfully detained under § 1226a "because he will have the opportunity to receive a hearing before an Immigration Judge." Dkt. 7 at 13. Respondents therefore argue that this Court does not have jurisdiction over this matter due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence, however, that Mr. Bacilio Vicente will have a bond hearing. In fact, Respondents contend that Mr. Bacilio Vicente is ineligible for a bond hearing. Because an

immigration judge has not "denied" or "revoked" bond, § 1226(e) does not have any bearing on this petition.

Mr. Bacilio Vicente has not had an opportunity to meaningfully request and receive an individualized bond hearing. Thus, his detention pursuant to § 1226(a) is currently unlawful.

### III.     Scope of Relief

Mr. Bacilio Vicente is entitled to habeas relief because his continued detention without a bond hearing violates "the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Bacilio Vicente asks the Court to order his immediate release. Immediate release is the customary remedy in habeas proceedings. *See Dep't of Homeland Security v. Thursaissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would not be in the interests of justice to order Mr. Bacilio Vicente's immediate release and instead orders Respondents to provide him with a bond hearing pursuant to § 1226(a) and its accompanying regulations. Any relief afforded through habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Mr. Bacilio Vicente maintains—and the Court agrees—that his detention without consideration of bond is contrary to law because his detention is authorized by § 1226(a), which makes him eligible for discretionary release but also allows the government to "continue to detain" him. 8 U.S.C. § 1226(a)(1). Mr. Bacilio Vicente's custody is not unlawful because of the very fact that he is detained. Rather, his custody is unlawful only to the extent the government refuses to consider whether he may be released as the law requires.

## IV.    Conclusion

The Court grants the petition to the extent that no later than **5:00 p.m. on February 17, 2026**, Respondents must either: (1) provide Mr. Bacilio Vicente with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Mr. Bacilio Vicente from custody, under reasonable conditions of supervision. No later than **12:00 p.m. on February 19, 2026**, Respondents must file documentation certifying that they have provided Mr. Bacilio Vicente with a bond hearing. If Respondents release Mr. Bacilio Vicente, then they must file documentation certifying his release. The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Dated:  February 10, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel